# In the United States Court of Federal Claims

No.19-1187
Filed: April 23, 2020

<table>
<tr><td>

**PACIFIC COAST COMMUNITY
SERVICES, INC.,**

*Plaintiff,*

**v.**

**UNITED STATES,**

*Defendant.*

</td><td>

Keywords: RCFC 12(b)(6);
Failure to State a Claim;
Breach of Contract; Firm-
Fixed Price Contract; Patent
Ambiguity

</td></tr>
</table>

*Timothy J. Turner*, Whitcomb, Selinksy, P.C., Denver, CO, for the plaintiff.

*Alison S. Vicks*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant, with whom was *Denise A. McLane*, Office of General Counsel, Department of Homeland Security, of counsel.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Pacific Coast Community Services, Inc. ("Pacific Coast"), alleges that the defendant, the United States, acting through the Department of Homeland Security's Federal Protective Service ("FPS" or the "Agency"), breached the contract between the parties by impermissibly withholding payments. The Agency has moved to dismiss Pacific Coast's complaint for failure to state a claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") because it did not specifically allege how the Agency breached the contract.

For the reasons discussed below, the Court grants the Agency's motion to dismiss for failure to state a claim.

## I. BACKGROUND

### A. Factual Background

The Court's previous decision, *Pacific Coast Community Services v. United States*, 144 Fed. Cl. 687 (2019) ("*Pacific Coast I*"), sets out most of the factual background. As relevant here, FPS issued Solicitation No. HSHQW9-12-R-00003 (the "Solicitation") in August 2012 for a firm-fixed price commercial items contract for administrative positions initially located in Los Angeles and San Francisco, with a period of performance of one base year and four one-year option periods.

The Solicitation required the offeror to provide five full-time equivalent ("FTE") employees for four Contract Line Item Numbers ("CLINs"). Each FTE was entitled to federal holidays as well as the number of vacation and sick days aligned with each employee's seniority under the Department of Labor Wage Determination, incorporated into the Solicitation by reference. *See* FAR 52.222-41; 41 U.S.C. § 351 *et seq.* The Solicitation required that each offeror submit a "Proposal Pricing Worksheet" that listed the offeror's hourly rate, monthly rate, and total price by CLIN, as calculated by the offeror's FTEs' average working hours—or productive hours—not including lunch time, federal holidays, and vacation or sick leave. The Solicitation also included a CLIN for overtime.

FPS awarded the contract (the "Contract") to Pacific Coast in September 2012, and Pacific Coast began performance in October 2012.

The Contract incorporated by reference FAR 52.212-4, Contract Terms and Conditions-Commercial Items. The Contract also contains payment terms that require the contractor to submit "accurate invoices that reflect the services provided each month[:]"

> C. The Contractor is responsible for submitting accurate invoices that reflect the services provided each month. Where there are variances between the requirements cited in the contract and the work actually performed, the Contractor shall attach a separate sheet to the invoice detailing each instance of a variance. The contractor shall compute the invoice price to reflect the actual amount. *Submission of false invoices shall be subject to contractual and legal actions.*

(ECF 10-1 at 14 (emphasis original).)[1]

During contract performance, Pacific Coast and FPS disagreed about the contractually-required productive work hours. In brief, after FPS assigned a new Contracting Officer ("CO") in June 2013, FPS began requiring Pacific Coast to perform 2,000 productive hours per FTE, per year, with 100 percent replacement of any absent employees, no matter how short the duration of their absence. (*See* ECF 10-5 (showing the first voluntary deduction in July 2013 and FPS's first unilateral deduction in October 2013).) FPS evaluated Pacific Coast's performance as "marginal" for its 2013 Contractor Performance Assessment Report System ("CPARS") rating.

Despite that rating, FPS awarded Pacific Coast the first, second and third option years in 2013, 2014 and 2015, respectively. Pacific Coast alleges that SourceAmerica, its centralized nonprofit agency under the AbilityOne Commission, evaluated its performance and determined that Pacific Coast was in compliance with the Contract's requirements.[2]

---

[1] All page numbers for ECF 10-1 refer to the ECF page numbers, marked on the top of each page.

[2] The AbilityOne Commission implements the AbilityOne program, which develops a "Procurement List" "of products and services which are suitable for the Federal Government to

In 2015, Pacific Coast began using the Contract's disputes process to challenge the Agency's contract interpretation regarding the number of productive hours required. Pacific Coast submitted a written demand claiming damages "from $5,000 to $25,000 per contract year or to $200,000 if the disputed contract is terminated by the Government." The CO denied the claim. That denial was affirmed by the Civilian Board of Contract Appeals.

In January 2016, FPS provided Pacific Coast with an updated CPAR, again rating Pacific Coast's performance as "marginal." The rating stemmed from FPS's continued concern over Pacific Coast's understanding of the Performance Work Statement and its failure to provide adequate staffing.

In May 2016, Pacific Coast submitted a certified claim to the CO, disputing the number of hours required by the Agency under the Contract and requesting payment of $257,300. Pacific Coast's claim alleged that the Agency's contract interpretation would force Pacific Coast to hire and train multiple additional staff members, resulting in an additional 250 hours per year, increasing the productive hours under the Contract to 2,138 hours per FTE, per year.

The CO partially denied the claim as to the additional 250 hours per year, but offered a $118,468 settlement to Pacific Coast for the difference between the 1,888 hours per year that Pacific Coast bid, and the 2,000 hours per year that FPS argued the contract required. Pacific Coast declined the settlement offer.

Pacific Coast seeks damages in this case for $113,036.14 that it claims that the Agency improperly deducted from its invoices. (ECF 10-5.)

## B.    Procedural History

Following Pacific Coast's refusal of the Agency's settlement offer, it filed suit. It claimed that the Agency breached the Contract by allegedly underpaying Pacific Coast for its work. As relevant here, Pacific Coast initially filed this case as Count Two of its initial case, *Pacific Coast I*. The Agency moved to dismiss that count because it had not received a final decision from a CO, a jurisdictional prerequisite to suit under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq*. Senior Judge Damich agreed and dismissed Count Two, as well as another count. Pacific Coast voluntarily dismissed two other counts before this Court heard the parties' cross-motions for summary judgment on Pacific Coast's remaining claim. The Court upheld Pacific Coast's argument that the Contract only required 1,888 productive hours per FTE, per year, but denied Pacific Coast's motion in part and granted the Agency's cross-

---

procure from qualified nonprofit agencies ("NPA[s]") which employ a workforce of blind or severely disabled individuals[,]" authorized by the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-8506. *Sys. Application & Techs., Inc. v. United States*, 107 Fed. Cl. 795, 797 (2012) (citing 41 U.S.C. § 8503). Pacific Coast is a qualified NPA. SourceAmerica oversaw Pacific Coast's performance improvement process through its "consistent and standardized 4-Step Performance Improvement Procedure [that was] developed for addressing performance related issues on AbilityOne contracts." (*See* ECF 14-1 at 1.)

motion for summary judgment in part because Pacific Coast did not show that it had suffered damages. *See Pacific Coast I.*

Pacific Coast filed this complaint in August 2019, while its first case was still pending. (ECF 1.) FPS moved to dismiss (ECF 9) in November 2019, and Pacific Coast amended its complaint (ECF 10) in December 2019. The Agency filed a second motion to dismiss (ECF 13) in January 2020. The Court granted in part the Agency's motion and dismissed Count Two of Pacific Coast's complaint in March 2020 (ECF 18). The Court heard telephonic arguments on April 7, 2020, and requested supplemental briefing, which the parties submitted on April 21, 2020, on the Agency's timeliness argument.

## II. JURISDICTION AND STANDARD OF REVIEW

The Tucker Act grants this Court jurisdiction to adjudicate contract claims that arise under, and satisfiy the requirements of, the CDA, 41 U.S.C. § 7101 *et seq*. *See* 28 U.S.C. § 1491(a)(2). Such claims must meet the CDA's threshold requirement of being an "express . . . contract . . . made by an executive agency for . . . the procurement of services." 41 U.S.C. § 7102(a)(2). Contract claims must also meet the CDA's requirement that a claim be submitted to and receive a final decision by the CO on the same operative facts and legal theory, stating a sum certain. *See, e.g.*, *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015).

FPS moved to dismiss Pacific Coast's claim for failure to state a claim under RCFC 12(b)(6). "A complaint must be dismissed under [RCFC] 12(b)(6) when the facts asserted do not give rise to a legal remedy or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In motions to dismiss, the Court accepts "as true all undisputed facts asserted in the plaintiff's complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff "has the burden of establishing jurisdiction by a preponderance of the evidence." *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015). If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## III. DISCUSSION

The Agency's motion presents a pure question of law.[3] The Agency's argument that it did not breach the Contract requires the Court to interpret the Contract. This purely legal

---

[3] In addition to moving to dismiss for failure to allege a breach of contract, the Agency has also argued that Pacific Coast's action is both untimely and barred by the estoppel effect of *Pacific Coast I*. As to the effect of *Pacific Coast I*, this case is not precluded because that case sought damages due to FPS wrongfully altering the Contract terms by demanding more productive hours. This case is about deductions from Pacific Coast's firm-fixed price. The nature of the two disputes is different, and the resolution of the first case does not compel the result in this one. As to the timeliness defense, the Agency argues that the Contract required Pacific Coast to present any claim to the CO within 12 months of the claim's accrual, and Pacific Coast failed to

question is appropriate to consider on a motion to dismiss for failure to state a claim. *See Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014).

"Contract interpretation begins with the language of the written agreement." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003). The Court must give "'clear and unambiguous'" contract terms "'their plain and ordinary meaning.'" *McAbee Const., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993)). If the contract terms are ambiguous, then the Court must determine whether the ambiguity is "patent." A patent ambiguity would impose on Pacific Coast the duty to have made a "reasonable inquiry" before bidding on the contract. *See, e.g., United States v. Turner Constr. Co.*, 819 F.2d 283, 285-86 (Fed. Cir. 1987).

The Agency argues that Pacific Coast failed to state a claim for a breach of contract because it did not identify any contractual provision that FPS violated when FPS deducted payment for work Pacific Coast did not perform. Pacific Coast argues that the Agency breached the Contract by deducting amounts from "accurate" invoices that Pacific Coast submitted. Pacific Coast argues further that under this firm-fixed price contract, its monthly invoices did not have to reflect accurately the actual number of productive hours that Pacific Coast performed each month. As a result, Pacific Coast does not allege that its FTEs worked the monthly allotment of the contractually-required 1,888 productive hours per FTE, per year, about 157.3 hours per month.

The Court agrees with the Agency that Pacific Coast failed to specify any breach of the Contract. The Court's decision in *Pacific Coast I* found that the Contract required 1,888 productive hours per FTE, per year. 144 Fed. Cl. at 696. The language of the Contract is explicit. The Contract requires five FTEs to fill four CLINs. The fifth CLIN provides for overtime hours. The Contract also provides that Pacific Coast can only bill for productive hours, which under the Contract do not include lunch breaks, federal holidays, or vacation or sick leave. Thus, the Contract requires 1,888 productive hours per FTE, per year, and on its face contemplates both that FTEs may be required to work overtime, and that the Agency would compensate Pacific Coast at higher rates for such overtime.

The Contract's payments provision provides that Pacific Coast is required to "submit[] accurate invoices that *reflect the services provided each month*." (ECF 10-1 at 14 (emphasis added).) When "there [we]re variances between the requirements cited in the contract and the work actually performed," the Contract further required Pacific Coast to "attach a separate sheet to the invoice detailing each instance of a variance." (*Id.*) In such cases, Pacific Coast was required to "compute the invoice price to reflect the actual amount" of work provided. (*Id.*) If Pacific Coast were to submit inaccurate invoices, those invoices would be subject to "contractual" actions – such as a unilateral deduction – or legal actions. (*Id.*)

---

do so. The Agency did not raise this defense in *Pacific Coast I*, even though it was equally applicable. The Agency did not raise this defense in its motion to dismiss in this case. Rather, it waited until its reply brief to present this defense. Because the Court finds that there has been no breach of contract in this case, the Court declines to reach the Agency's timeliness defense.

Although the Contract is for a firm fixed price, that price is only fixed for one deliverable—the 1,888 productive hours per FTE, per year (or 157.3 productive hours per FTE, per month).[4]  The only way to give meaning to all parts of the Contract is to find that the Contract's overtime and "accurate invoices" terms contemplated situations in which Pacific Coast would provide a different number of hours than the Contract required, and that the Agency would pay Pacific Coast for the overtime, while Pacific Coast would deduct from its invoices when it provided less than 157.3 productive hours per FTE, per month.

Pacific Coast argues in its complaint, its response to FPS's motion to dismiss and at oral argument that it had a firm-fixed price contract, and therefore the Agency was not authorized to deduct any money from its invoices.  This argument assumes that the denomination of the Contract as "firm-fixed price" controls over the actual terms of the Contract.  The form cannot trump the substance of the Contract in the way that Pacific Coast urges.  *See, e.g.*, *McAbee Const., Inc.*, 97 F.3d at 1435 (contracts must be read as a whole, giving meaning to all parts).  Pacific Coast's interpretation of the Contract as a fully fixed-price contract without a productive-hours deliverable requirement is incompatible with the Contract's plain language and ignores the Contract's productive-work, overtime, and payment terms.

The Contract expressly instructs the contractor to deduct from its invoices when it provides fewer than 157.3 productive hours per FTE, per month.  The Contract further provides that the Agency can take contractual actions if the contractor submits inaccurate invoices, which includes inflated invoices.[5]  Pacific Coast has not alleged that its invoice submissions for 157.3 hours per FTE, per month were accurate.[6]  Under these facts, Pacific Coast cannot plausibly allege that the Agency breached the Contract, and thus has not identified a provision of the

---

[4] In effect, this Contract is akin to a firm-fixed price level of effort contract.  *See* FAR 16.207-1 (firm-fixed price level of effort contracts "require (a) the contractor to provide a specified level of effort, over a stated period of time, on work that can be stated only in general terms; and (b) the Government to pay the contractor a fixed dollar amount.").  This Contract's work, administrative and security services, is generic and measured by 1,888 productive hours per FTE, per year, and the Agency was required to pay Pacific Coast's fixed price for that 1,888 productive hours.

[5] It appears that Pacific Coast may have presented inflated claims for payment on the incorrect belief that a firm-fixed price contract entitled it to that entire price, even if it did not perform the work required under that contract.  Pacific Coast's contract, however, is for a firm fixed price for a specific deliverable (157.3 productive hours per FTE, per month; the monthly allotment of 1,888 productive hours per FTE, per year).  Thus, the Agency could have taken legal action, such as counter-claiming for a False Claims Act violation, for Pacific Coast's inflated invoices.

[6] During the oral argument, Pacific Coast argued that so long as it provided the work outlined in the Contract's Performance Work Statement, it met its contractual obligation; there was no need for it to provide a specific number of productive hours.  That reading directly contravenes the Contract's express terms.

Contract that the Agency breached.  The Agency's motion to dismiss for failure to state a claim must be granted.

The Court's ruling is the same even if the Contract's provisions were deemed to be ambiguous, because any such ambiguity would be patent.  *See Halifax Eng'g, Inc. v. United States*, 949 F.2d 403 (Fed. Cir. 1991), 1991 WL 202153 at *2.  When, as in this case, the Contract purports to be for a firm fixed price but has some provisions of a firm-fixed price level of effort contract, the contractor has a duty to enquire before submitting a bid.  Pacific Coast knew or should have known at the time it submitted its bid that the Contract was not a purely fixed-price effort by the Solicitation's payment terms, but Pacific Coast does not allege that it inquired about those terms.

## IV.   CONCLUSION

Because Pacific Coast failed to allege a breach of contract, the Agency's motion to dismiss for failure to state a claim is **GRANTED** and the case is **DISMISSED**.  The Court will issue an order concurrently with this opinion reflecting its conclusion and directing judgment for the defendant.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**